1  TODD M. LANDER (BAR NO. 173031)
   todd.lander@ffslaw.com
2  MARK B. MIZRAHI (BAR NO. 179384)
   mark.mizrahi@ffslaw.com
3  FREEMAN, FREEMAN & SMILEY, LLP
   1888 Century Park East, Suite 1500
4  Los Angeles, California 90067
   Telephone:  (310) 255-6100
5  Facsimile:  (310) 255-6200

6  *Attorneys for Plaintiff*
   *Kellytoy Worldwide, Inc.*
7

8           UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10

| | |
|---|---|
| 11  KELLYTOY WORLDWIDE, INC., a California corporation; | Case No.   2:20-cv-02040 |
| 12                    Plaintiff, | **COMPLAINT FOR:** |
| 13  vs. | **1.  FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. § 501);** |
| 14 | |
| 15  IDEA NUOVA, INC., a New York corporation; BIG LOTS STORES, INC., an Ohio corporation, and DOES 1 through 10, inclusive, | **2.  FEDERAL TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN AND FALSE DESCRIPTION (15 U.S.C. § 1125);** |
| 16 | |
| 17                    Defendants. | **3.  COMMON LAW TRADEMARK INFRINGEMENT;** |
| 18 | **4.  CALIFORNIA COMMON LAW UNFAIR COMPETITION; AND** |
| 19 | |
| 20 | **5.  CALIFORNIA STATUTORY UNFAIR COMPETITION.** |
| 21 | |
| 22 | **DEMAND FOR JURY TRIAL** |

23         Plaintiff KELLYTOY WORLDWIDE, INC., a California corporation

24  ("Kellytoy") brings this action against defendant IDEA NUOVA, INC., a New York

25  corporation ("Idea Nuova"), BIG LOTS STORES, INC., an Ohio corporation ("Big

26  Lots"), and DOES 1 through 10 (collectively, "Defendants") for injunctive relief

27  and damages under the laws of the United States and the State of California as

28  follows:

## JURISDICTION AND VENUE

1.     This action arises under the copyright laws of the United States, 17 U.S.C. § 101 *et seq*., the trademark laws of the United States, 15 U.S.C. § 1125(a), and under the statutory and common law of trademark/trade dress infringement and unfair competition.

2.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367, and 15 U.S.C. §§ 1116, 1117, 1121, and 1125.

3.     Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 and 1400(a).

4.     This Court has personal jurisdiction over Defendants, as Defendants are doing business in California and this District and are subject to the jurisdiction of this Court.

5.     Defendant Idea Nuova actively distributes plush toys, including the accused infringing plush, throughout the state of California and this District.  Idea Nuova has purposely and willfully directed its intentional misuse and infringement of Kellytoy's copyrights and trade dress in the State of California with the knowledge that the actions have caused damage within the State of California.  By transacting business with customers in this District, and by using the designs, goodwill and reputation built by Kellytoy, in this district, Idea Nuova has purposely availed itself of the privilege of conducting business in this judicial district and has established sufficient contacts with the State of California such that it is subject to jurisdiction in California.

6.     Similarly, defendant Big Lots owns and operates numerous retail stores within the state of California and this District, such that its contacts with California are so continuous and systematic as to render it essentially at home in this state.  In addition, Big Lots actively distributes plush toys, including the accused infringing plush, throughout the state of California and this District.  Big Lots has purposely and willfully directed its intentional misuse and infringement of Kellytoy's

copyrights and trade dress in the State of California with the knowledge that the actions have caused damage within the State of California.  By transacting business with customers in this District, and by using the designs, goodwill and reputation built by Kellytoy, in this district, Big Lots has purposely availed itself of the privilege of conducting business in this judicial district and has established sufficient contacts with the State of California such that it is subject to jurisdiction in California.

7.     To the extent Kellytoy's claims arise from California statutory and/or common law, this Court has proper jurisdiction because it bears a logical relationship to the aggregate core of operative facts relating to Kellytoy's claims under the Copyright Act and Lanham Act.

## **NATURE OF THE ACTION**

8.     This is an action for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101, *et seq*.; and trade dress infringement, unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), California Bus. & Prof. Code § 17200, *et seq*., and the common law.

9.     This action, as alleged below, arises specifically because defendant Idea Nuova and Big Lots have embarked on a transparent campaign to hijack Kellytoy's proprietary designs, and longstanding and well-earned goodwill in the plush toy marketplace by infringing on Kellytoy's registered copyrights and distinctive trade dress.

10.     Kellytoy's SQUISHMALLOW branded plush toys ("Squishmallows") – representative samples of which are depicted in **Exhibit 1** hereto – are one of the world's hottest plush toy lines.  Kellytoy's Squishmallows feature a highly distinctive and widely recognized trade dress (described below), which Kellytoy pioneered and created.  Kellytoy actively markets its Squishmallows through numerous media outlets, including, without limitation, on social media, at tradeshows, through Squishmallows.com, amazon.com, walmart.com,

walgreens.com and target.com, and on Kellytoy's website and social media accounts, depicting images of its proprietary Squishmallows line of plush toys.

11.    The explosion in popularity of Kellytoy's Squishmallows and the resulting and widespread customer and industry recognition, has unfortunately led to illegal imitation by some of Kellytoy's competitors.  Defendants are merely the latest of the intellectual property pirates seeking to conscript Kellytoy's designs and goodwill for unfair competitive purposes.   Indeed, Kellytoy has discovered that Defendants have been making and/or offering for sale to customers at least three (3) knock-off products under the moniker Dream Street that copy Kellytoy's Designs and incorporate Kellytoy's Squishmallows Trade Dress (defined below) for distribution to customers throughout the United States and within this state and district that infringe upon Kellytoy's copyrights and Squishmallows Trade Dress.

12.    Accordingly, Kellytoy has no alternative but to take steps to preserve and protect its intellectual property from this naked attack, and it thus has filed this action for copyright infringement, trade dress infringement, unfair competition and false designation of origin under the Copyright Act, 17 U.S.C. §101 et seq., Lanham Act, 15 U.S.C. § 1125(a), California unfair competition laws, California statutory law pursuant to Bus. & Prof. Code §17200, *et seq*., and common law trade dress infringement.

13.    Accordingly, to prevent and remediate the rampant consumer confusion and misappropriation of Kellytoy's copyrighted designs in its Squishmallows resulting from Defendants' unauthorized use, promotion and sale of the Infringing Plush (defined below), and to compensate Kellytoy for its injuries, Kellytoy seeks immediate and permanent injunctive relief, compensatory damages, disgorgement of Defendants' profits, statutory damages, punitive damages, Kellytoy's reasonable attorneys' fees and expenses, a product recall, and corrective advertising sufficient to address Defendants' wrongdoing and its resulting damage to Kellytoy.

**THE PARTIES**

14.     Kellytoy Worldwide, Inc. is a California corporation with its principal place of business located in Vernon, California.

15.     Kellytoy is in the business of developing, manufacturing and selling children's toys including, among other things, plush toys.

16.     On information and belief, defendant Idea Nuova, Inc. ("Idea Nuova") is a New York corporation with a place of business in New York.

17.     Idea Nuova is in the business of manufacturing and selling lifestyle home décor, textile, decorative accessory and giftware products, including, among other things, plush toys.

18.     On information and belief, defendant Big Lots Stores, Inc. ("Big Lots") is an Ohio corporation with a place of business in Ohio and numerous stores in this judicial district.

19.     Big Lots owns and operates an online and numerous retail stores throughout the United States and, on information and belief, in this District that sell various merchandise, including plush toys and the Infringing Plush (defined below).

20.     The true names and capacities of defendants sued herein as DOES 1-10, inclusive, are unknown to Kellytoy, who therefore sues said defendants by such fictitious names.  Kellytoy will amend this Complaint to allege their true names and capacities when the same are ascertained.

21.     Upon information and belief, at all relevant times mentioned in this Complaint, Defendants, and each of them, were acting in concert and active participation with each other in committing the wrongful acts alleged herein, and were the agents of each other and were acting within the scope and authority of that agency and with the knowledge, consent and permission of one another.

**BACKGROUND FACTS**

**Kellytoy and Its Protected Intellectual Property Rights**

22.     Kellytoy is an innovative and highly successful creator, manufacturer,

distributor and seller of unique plush toys.

23.     Kellytoy has been in business for approximately two decades and developed a reputation for producing high quality, unique, and creative plush toys, including, most recently, its highly successful Squishmallows line of plush toys in connection with the SQUISHMALLOW brands.  (*See, e.g.,* **Exhibit 1**.)

24.     Kellytoy devotes extensive time and resources promoting and preserving its image and identity and the image and identity of its high-quality plush toys.  That includes, without limitation, creating distinctive designs and marks for use on its products, seeking U.S. trademark and copyright registrations for such marks and designs, and taking all steps necessary to preserve and protect its intellectual property.

### Kellytoy's Subject Copyrighted Designs

25.     The plush designs numbered 3, 6, 9, 11, and 12 depicted in **Exhibit 1** – a subset of Kellytoy's line of Squishmallows – comprise some of Kellytoy's most popular Squishmallows, which were created by or assigned to Kellytoy (the "Squishmallow Designs").  As explained in greater detail below, these Squishmallow Designs are the subject of Copyright Registrations issued by the United States Copyright Office, pursuant to 17 U.S.C. §101 *et seq.*

### Kellytoy's Squishmallows Trade Dress

26.     In 2016, Kellytoy conceived of and began creating its Squishmallows line of plush toy designs that shares common, unique features distinguishing them from the goods of others.  Most of these designs are the subject of United States Copyright Registrations or pending applications therefor, and each is sold in commerce under the Squishmallows brand.  In essence, Kellytoy created an entirely new and distinctive line of plush toys that has carved a previously non-existent niche in the marketplace.  And that newly created niche has, in turn, spawned a cultural craze in which numerous imitators have emerged, not the least of which are Defendants.

27.     In that regard, however, Kellytoy has been and is the sole owner of all right, title and interest in and to the Squishmallows line that possesses unique, recognizable and distinguishing features that are common across much of the Squishmallows line.  From 2016 to the present, Kellytoy has expended large sums of money in developing, advertising and promoting the Squishmallows Trade Dress (defined below), and the product designs bearing it, through the United States.  In fact, Kellytoy has an annual marketing budget of approximately $1,000,000 and is spending approximately $500,000 annually in direct to consumer and business-to-business advertising in connection with its Squishmallows branded goods.

28.     Due to Kellytoy's distinctive trade dress, coupled with its unique designs, extensive marketing efforts, media coverage, and market penetration, the Squishmallows Trade Dress has acquired distinctiveness in the marketplace when applied to plush toys.  In fact, because of Kellytoy's extensive promotional activities and widespread display of plush toys bearing the Kellytoy Trade Dress directed to the public, and a consequence of Kellytoy's well-earned reputation for fairness and integrity in dealings with its customers, the relevant consuming public has come to recognize and associate plush toys embodying the trade dress as high quality goods connected with or offered by Kellytoy.  As a result, that trade dress has valuable goodwill and consumer recognition associated with it and has come to symbolize the exemplary reputation of Kellytoy.

29.     Consistent with that advertising and marketing scope, Kellytoy sells a broad range of Squishmallows branded plush toys featuring the brand's iconic trade dress, and whose overall look, feel and image – and in particular but without limitation its shapes, colors, textures and graphics – serve as a distinctive source identifier to the consuming public.  Though not easily reduced to writing, these features include: (1) substantially egg/bell shaped plush toys depicting various similarly shaped fanciful renditions of animals/characters; (2) simplified Asian style Kawaii faces with repeating and complementary rounded/oval shaped graphics

1    depicting features on the characters themselves (such as eyes, snouts and bellies)

2    and which conform to and support the overall egg/bell shape of the toys; (3)

3    embroidered facial features, such nostrils, and/or mouths; (4) distinctive contrasting

4    and non-monochrome coloring; and (5) short-pile velvety velour-like textured

5    exterior with a light and silky memory foam-like stuffing providing an extremely

6    soft and squeezable marshmallow feel.  These features, and the resulting overall

7    look and feel of the toys bearing them, are more fully depicted, without limitation,

8    in **Exhibit 1** hereto (collectively, together with **Exhibit 1**, the "Squishmallows

9    Trade Dress").

10        30.    Kellytoy has, beginning in 2017 and continuing without interruption,

11   expended a great deal of time, effort, and money in the promotion of its

12   Squishmallows line.  And due to Kellytoy's distinctive designs, robust marketing

13   efforts, media coverage, and market penetration, the Squishmallows Trade Dress has

14   acquired distinctiveness in the marketplace when applied to plush toys.  As a further

15   result of Kellytoy's extensive promotional activities and widespread display of its

16   Squishmallows directed to the public and as a result of the fairness and integrity

17   mentioned above, the relevant consuming public has come to recognize and

18   associate plush toys bearing the Squishmallows Trade Dress as high quality goods

19   connected with or offered by a single source, Kellytoy.  The Squishmallows Trade

20   Dress thus embodies valuable goodwill and consumer recognition associated with it

21   and has come to symbolize the valuable goodwill and reputation of Kellytoy.

22        31.    Beyond merely being original and inherently distinctive, the

23   Squishmallows Trade Dress is also widely recognized by consumers.  A simple

24   Internet search using the Google search engine yields, for example, about 1,370,000

25   "hits" for the search term "Squishmallows."

26        32.    The scope of Kellytoy's sales reflects the market penetration of its

27   intellectual property.  The company markets and sells Squishmallows not only

28   through thousands of retail stores nationwide, but additionally on its website

1   <squishmallows.com> featuring dozens of copyright-protected photographs of its

2   plush toys and models holding its Squishmallows.  Copies of selected pages from

3   website located at <squishmallows.com> are attached as **Exhibit 2**.  Kellytoy's

4   Squishmallow website traffic has, not surprisingly, grown exponentially since its

5   launch in 2017, and has now reached an average in excess of 5,500 visits per day

6   and its website traffic consistently ranks in the top 50,000 for U.S. sites, and top

7   125,000 for global sites; and recorded as high as 14,162 in the U.S. in December

8   2019.

9       33.     Kellytoy also actively engages in promoting its line of Squishmallows

10  branded plush toys through its numerous social media accounts, including on

11  Instagram, Facebook, and Twitter.  Indeed, Kellytoy's legion of loyal fans of its line

12  of Squishmallows branded plush toys have been extremely engaged on social media,

13  including Facebook and Instagram, demonstrating their awareness and affection for

14  Kellytoy's Squishmallows.  For example, more than 28.5K organic posts exist on

15  Instagram that use the official hashtag (#Squishmallows); the average

16  Squishmallows post "likes" on Instagram hovers at over 3000+ per post and 100+

17  average comments per post; through public relations activities alone, not including

18  paid advertising, Kellytoy Worldwide's Squishmallows branded plush toys have

19  garnered over 200 MILLION media impressions; since July 21, 2017, Kellytoy's

20  paid placements on Facebook and Instagram campaigns have reached more than

21  23.6 MILLION unique individuals and 83.7 MILLION impressions.

22      34.     Kellytoy uses digital ads to advertise its Squishmallows plush toys.

23  Owing to their immense popularity, these ads promoting specific retailers have

24  average click through rates of 30+% (the industry average is rates of 30+% (the

25  industry average is 1-2%).

26      35.     Further adding to their recognition and secondary meaning in the

27  marketplace, Squishmallows have been featured in over 300 publications, including

28  magazines, press articles, reviews, and videos, as set forth in greater detail in

**Exhibit 3** hereto, including many mainstream media publications such as the *Washington Post*, the *Chicago Tribune*, the *Daily Harold*, O*kay! Magazine*, among others.  By way of example only, Squishmallows have been also recognized by: (1) The *Washington Post* and *Consumer Reports* on their 2017 Holiday Gift Guides; (2) *LA Parent* in its October 2017 issue, under the "Products We Love" section, which specifically identified Squishmallows; and (3) *OK!* Magazine in its August 21, 2017 issue, which, as depicted below, featured Squishmallows and described them in flattering terms, stating "Cuddly as they are cute, they make great couch pals, pillows and bedtime buddies in any home.  Collect the whole squad! squishmallows.com."



36.     There are myriad further examples of the popularity and market penetration of the Squishmallows line.  To name just a few, Squishmallows were featured in the October 2017 issues of *L.A. Parent* Magazine, *City Parent Magazine*, and *San Diego Family Magazine* and included in the 2017 gift guides for various publications, including in *The Washington Post*, *The Houston Chronicle*, and *L.A. Parent*.

37.     In fact, Kellytoy's Squishmallows sold out through Walgreens.com during their Gift of the Week promotion in early November 2017, as well as exceeding all sales goals for the campaign, both online and in stores.

38.     Reflecting the quality of the goods, Kellytoy's Squishmallows have also received numerous industry awards and product recommendation lists, including by the National Parenting Product Awards, Parents' Choice, and TTPM, as more fully set out in **Exhibit 3**.  Thus, for example, Kellytoy's Squishmallows were named by *Toy Insider* as one of the "Top Holiday Toys," made the cover the September/October 2017 *Toy Book Magazine*, and have been featured in numerous other trade magazines, such as, *Teddy Bear and Friends Magazine* and *Animal Tales Magazine*.

39.     The popular blog *Trendy Mom Reviews* listed Squishmallows as one of "The Best Gifts for 2018!"  Similarly, the popular blog *Two Kids And A Coupon* did its own review of Kellytoy's Squishmallows branded plush, saying, among other things, that they are "a gift for anyone on our list this holiday!"

40.     Squishmallows branded toys were also:  (1) named one of "The Best New Toys" by Minnesota Parent Magazine! and was named a Great Holiday Gifts For Littles by Texas Lifestyle Magazine!; (2) selected as among the "5 Editor's Picks From Toy Fair" 2019 by *Gifts & Decorative Accessories*; (3) featured by *The Toy Insider* in connection with its March 13, 2019 article entitled "Tips for Tackling Testing & Student Stress"; (4) featured on the cover of *The Toy Book's* "Plush Issue" and its Toy Fair New York 2019 issue, in *The Toy Book's* August 5, 2019 issue (specifically featuring the upcoming Halloween Squishmallows line), and in *The Toy Book's* issue (specifically featuring the Squishmallows branded turtle) on May 15, 2019; (5) featured in *TFE Toys & Family Entertainment's* NYC Toy Fair 2019 issue; and (6) won the *Parent and Teacher Choice Award* for 2019 from HowtoLearn.com.

41.     Kellytoy's Squishmallows have become so popular that they were included in the celebrity gift bags distributed to the celebrity attendees in connection with the 2019 Teen Choice Awards, including Jenn Ortega, Lucy Hale, Lil Nas X, Sarah Hyland, One Republic, among numerous others.

42.     This widespread publicity and recognition has occurred in conjunction with Kellytoy's advertising efforts concerning Squishmallows, which, as alleged above, have comprised consistent and robust marketing campaigns, including email campaigns, social media posts, and direct to consumer advertising.  Kellytoy's Squishmallows currently have over 114,000 Instagram followers, over than 82,000 Facebook followers – more than many longer-existing and well-known plush brands.  To its followers, Kellytoy regularly publishes photographs of its Squishmallows plush toys.  Many of these followers, in turn, share these posts with their friends and social media followers.  A copy of Squishmallows Instagram page, bearing photographs of Squishmallows plush toys, is attached as **Exhibit 4**.

43.     In addition, hundreds of well-known YouTube influencers and vloggers have shared and posted images and videos of themselves holding plush toys in Kellytoy's line of Squishmallows products.  Tens of thousands of consumers have done the same through numerous media platforms, including, Facebook, Instagram, Pinterest and YouTube.  These posts have generated millions of "likes" and "shares" and all feature, among other things, depictions of Kellytoy's Squishmallows plush toys.  In fact, several members of the public have created their own Instagram fan accounts and Facebook groups, all bearing content featuring Squishmallows branded plush toys.

44.     Kellytoy's Squishmallows are listed amongst the leading global brands and toys such as Hatchimals, Hasbro, RB, Hot Wheels, NERF, and Spin Master by several industry publications.

45.     As a direct result of Kellytoy's efforts at promoting and building its brand, Kellytoy's Squishmallows line has exploded in popularity, creating

substantial demand for and interest in Squishmallows, and generating enormous goodwill in the Squishmallows Trade Dress in the United States and around the world.  In fact, Kellytoy's Squishmallows are sold through hundreds of retailers including some of the largest retailers in the country, including, approximately 1,000 Costco stores, 5,500 Wal-Mart stores, 8,500 Walgreens stores, 6,200 CVS stores, 4,000 Kroger supermarkets and Fred Meyer stores, 1,800 Target stores, 700 Justice stores, 900 Party City stores, amongst other outfits such as Dave & Busters, Justice, Hallmark stores, Albertson's, Knotts Berry Farms and numerous others.

46.    Furthermore, during several summer 2019 grand openings for Costco, the highly coveted 24 inch Squishmallows plush sold out within two days, exceeding store expectations and projected demand.

47.    Since the summer of 2017, Kellytoy has shipped approximately a whopping 40 million (40,000,000) units of its traditional Squishmallows and there is no indication that sales will be slowing down anytime soon.  Kellytoy's Squishmallows products embodying the Trade Dress have yielded tens of millions of dollars of sales in the U.S. over the past year.

48.    Nor has the pace of sales of Kellytoy's Squishmallows branded toys slowed.  To the contrary, sales of Squishmallows plush have been steadily increasing and there is no indication of their popularity waning any time soon. These goods have, in fact, become so popular among, sought after by, and recognizable as a brand by the public that some members of the public have been selling unauthorized merchandise, such as T-shirts, flasks, and jewelry, bearing the images of some of Kellytoy's most popular Squishmallows branded toys.  Few plush lines can boast having third parties attempt to "merchandise" its copyrighted designs and goods generally bearing its trademark – something typically reserved for Disney, Looney Tunes, and the like.  But while Kellytoy has since put a stop to these unauthorized uses, it has preserved exemplars of some such infringements by six different infringers, as depicted below:










49.     The immense popularity – indeed ubiquity – of Kellytoy's Squishmallows line of plush toys, including those set forth on **Exhibit 1**, has now reached the point where Kellytoy has recently embarked on a global initiative to license the Squishmallows designs and trademark to include diverse categories of merchandise, including apparel, sleepwear, accessories, headwear, home decor, health and beauty, back to school, stationery and paper goods, games and puzzles, novelty, publishing and magazines, food and beverage, and mobile gaming.  (*See*, *e.g.*, **Exhibit 5** hereto.)

50.     As a result of the extensive efforts to promote, advertise and sell the products embodying the Squishmallows Trade Dress, consumers have come to associate the Squishmallows Trade Dress with a designation of source and the

1 products are inherently distinctive and/or have acquired secondary meaning.

2    51.    All of which is to reiterate that, due to Squishmallows' massive success

3 and popularity, consumers have come to associate Kellytoy's high-quality

4 Squishmallows plush toys with the Squishmallows Trade Dress and, conversely,

5 have come to recognize the Squishmallows Trade Dress as a designation of source.

6 But that success has come at a price – the popularity of Squishmallows branded

7 goods has attracted many imitators, such as Defendants, all of whom are attempting

8 to benefit from Kellytoy's hard earned goodwill, and to do so illegally.  In fact,

9 Kellytoy has pursued numerous third-party infringers who have co-opted the

10 Squishmallows Trade Dress and succeeded in stemming such infringements.

11                          **Defendants' Unlawful Conduct**

12    52.    At the outset, none of the defendants to this action is licensed or

13 otherwise authorized by Kellytoy to market or distribute products bearing or

14 embodying Kellytoy's Squishmallow Designs and/or Squishmallow Trade Dress.

15    53.    Well after Kellytoy established its reputation in its Squishmallow Trade

16 Dress and that Trade Dress acquired distinctiveness in the marketplace, defendant

17 Idea Nuova began supplying defendant Big Lots with various plush toys bearing

18 substantially and confusingly similar copies of Kellytoy's Squishmallow Designs and

19 Squishmallow Trade Dress (hereinafter referred to as "Infringing Plush") for

20 distribution and sale by Big Lots through its United States stores.  Photographs of the

21 Infringing Plush bearing Big Lots' trademarks are collectively attached hereto as

22 **Exhibit 6**.

23    54.    Consequently, by letter dated January 23, 2020, Kellytoy wrote directly

24 to defendant Big Lots demanding that it cease-and-desist from copying the Kellytoy

25 Designs and Squishmallows Trade Dress.  Idea Nuova responded by denying its

26 wrongful conduct and essentially stating its intention to continue to infringe

27 Kellytoy's proprietary rights by continuing to offer the Infringing Plush for sale.

28

55.     Upon information and belief, Idea Nuova offered to sell and sold the Infringing Plush to Big Lots in the United States, corresponded across state lines with Big Lots in the United States concerning the production, sale, and distribution of the Infringing Plush, and transported the Infringing Plush to Big Lots in interstate commerce.  And, in turn, Big Lots has been reselling the Infringing Plush through its brick and mortar and online stores throughout the United States.

56.     Upon information and belief, Defendants manufactured in, and imported from, China the Infringing Plush into the United States for the purpose of having the Infringing Plush enter interstate commerce and/or to be transported or used in interstate commerce through the same channels of trade through which Kellytoy sells its Squishmallows plush.  Idea Nuova has in fact sold the Infringing Plush to Big Lots which has in turn sold and is currently selling the Infringing Plush in interstate commerce.

57.     Kellytoy is further informed and believes that Defendants, without Kellytoy's consent or permission, sell, advertise, promote, display, and distribute, toys bearing Squishmallow Designs and Squishmallow Trade Dress in United States commerce.

58.     Upon information and belief, Idea Nuova has agreed to sell the Infringing Plush to Big Lots at prices that were/are relatively lower than the prices charged by Kellytoy for its Squishmallows plush.  Kellytoy is informed and believes that Idea Nuova is able to undercut Kellytoy's sales prices because, rather than investing in creating its own designs and identity, Idea Nuova has instead copied and infringed Kellytoy's proprietary Squishmallow Designs and Squishmallow Trade Dress and otherwise because its Infringing Plush are of inferior quality as compared to Kellytoy's SQUISHMALLOW branded plush.

59.     Such unauthorized activities are clearly intended to draw on the goodwill Kellytoy has garnered in its Squishmallows Trade Dress, and to compete unfairly and illegally for Kellytoy's customers through trademark confusion, trade

dress confusion, and predatory tactics.

60.     The activities of Defendants in copying, distributing, advertising, selling, offering for sale and otherwise using the Squishmallow Trade Dress embodied in the Infringing Plush – including by copying wholesale the shape and look – constitute false designation of origin regarding sponsorship of those plush toys and falsely represent to the public that Defendants' plush toys originate from Kellytoy, and/or that Defendants' plush toys have been sponsored, approved or licensed by Kellytoy, or in some way affiliated or connected with Kellytoy.  Such activities of Defendants are likely to confuse, mislead, and deceive Defendants' customers, purchasers, and members of the public as to the origin of the toys bearing the Squishmallow Trade Dress, or to cause such persons to believe that Defendants' Infringing Plush and/or Defendants have been sponsored, approved, authorized, or licensed by Kellytoy or in some way affiliated or connected with Kellytoy, all in violation of 15 U.S.C. §1125(a).

61.     Upon information and belief, the activities of Defendants were done willfully with full knowledge of the falsity of such designations of origin and false descriptions or representations, with the intent to trade on the enormous goodwill Kellytoy has earned in its Squishmallows, and with the intent to cause confusion, and to mislead and deceive the purchasing public into believing that the products Defendants sell are directly sponsored by, authorized, by, associated with, or originate from Kellytoy.

62.     Defendants, by their unauthorized copying and use of Kellytoy's Squishmallow Designs and Squishmallow Trade Dress, have engaged and will engage in acts of copyright infringement, unfair competition, unlawful appropriation, unjust enrichment, wrongful deception of the purchasing public, and unlawful trading on Kellytoy's good will and the public acceptance of Kellytoy's original works. Defendants' activities have damaged and will continue to damage the reputation, business and good will of Kellytoy nationally and in this judicial district.

63.    Upon information and belief, unless enjoined by the Court, Defendants will continue and further escalate their infringing activities.

64.    Kellytoy has no adequate remedy at law.  Thus, these activities of Defendants have caused and, if not enjoined, will continue to cause irreparable, immediate and impending harm and damage to Kellytoy's business, and to the business, business reputation and good will of Kellytoy.

## FIRST CAUSE OF ACTION

### (Federal Copyright Infringement -- 17 U.S.C. §501)

(Against all Defendants)

65.    Kellytoy repeats and realleges each and every allegation above as though fully set forth herein.

66.    Kellytoy owns a valid copyright in each of the Squishmallow Designs. The Squishmallow Designs are original, decorative, and non-functional.  After having had access to Kellytoy's Squishmallow Designs, Defendants, without authorization from Kellytoy, have designed, displayed, manufactured, distributed, advertised, offered for sale and/or sold the Infringing Plush designs numbered 1, 2, 3, 4, and 5 depicted in **Exhibit 6** bearing designs that Defendants copied from the Squishmallow Designs.

67.    All of the Squishmallow Designs were originally created by Kellytoy or were assigned to and are owned by Kellytoy.

68.    The Squishmallow Designs comprise original works of authorship that may be copyrighted under United States law.  In fact, Kellytoy has complied with requirements of Title 17 of the United States Code with respect to the registration of Kellytoy's Squishmallow Designs numbered 3, 6, 9, 11, and 12 depicted in **Exhibit 1**, as evidenced by United States Copyright Registration Nos. VAu 2-096-020 (turquoise unicorn), VA 2-096-024 (fox), VA 2-118-285 (bear), VA 2-143-785 (spotted eye dog), and VA 2-154-787 (turquoise owl), entitling Kellytoy to the exclusive rights and privileges in and to the above-referenced copyrights.  These

copyright registrations are valid and subsisting.

69.     Defendants have imitated, displayed, reproduced, distributed, and/or created derivative works from the subject matter embodied in the Squishmallow Designs in connection with Defendants' manufacture, promotion, and solicitation and acceptance of orders for the sale of Defendants' Infringing Plush designs depicted in **Exhibit 7**.

70.     Defendants' acts are in violation of the exclusive rights of the copyright holder to reproduce, distribute, display, and create derivative works from the copyrighted Squishmallow Designs, as articulated in 17 U.S.C. § 106.  Defendants have thereby infringed Kellytoy's copyrights in the Squishmallow Designs.

71.     Such activities and conduct has caused Kellytoy injury for which it is entitled to recover under 17 U.S.C. § 504.

72.     On information and belief, Defendants' infringing acts were committed willfully, maliciously, with knowledge and/or in reckless disregard of Kellytoy's exclusive rights in the Squishmallow Designs.

73.     On information and belief, as a result of Defendants' copyright infringement, they have made substantial profits and gains to which they are not entitled to retain.

74.     As a direct and proximate result of Defendants' unlawful conduct, Defendants have caused and will continue to cause irreparable injury to Kellytoy, for which Kellytoy has no adequate remedy at law.  Unless Defendants are restrained by this Court from continuing their imitation, copying, display, distribution, reproduction and creation of derivative works from the works embodied in the copyrighted Squishmallow Designs, these injuries will continue to occur.  Accordingly, Kellytoy is entitled to preliminary and permanent injunctions restraining Defendants' infringing conduct, pursuant to 17 U.S.C. § 502.

/ / /

/ / /

## **SECOND CAUSE OF ACTION**

**(Trademark Infringement, False Designation of Origin and False Description --**

**15 U.S.C. §1125)**

(Against All Defendants)

75.     Kellytoy repeats and realleges each and every allegation of paragraphs 1 through 64 above as if fully set forth herein.

76.     Kellytoy owns and has a protectable interest in the Squishmallows Trade Dress.

77.     As owner of all rights, title and interest in and to the Squishmallows Trade Dress, Kellytoy has standing to maintain an action for trade dress infringement under the Lanham Act including, 15 U.S.C. § 1125.

78.     The Squishmallow Trade Dress is non-functional and highly distinctive, and has become associated in the public mind with plush toy products of the highest quality and reputation finding their origin in a single source, Kellytoy.

79.     The Squishmallows Trade Dress has acquired secondary meaning based upon, at least in part to, the amount and manner of advertising of products embodying the Squishmallows Trade Dress, the volume of sales, as well as, the length and manner of use of the products.

80.     The Squishmallow Trade Dress – comprised of a proprietary combination of aesthetic and stylized plush toy features, including the shape, color, color combinations, texture and graphics – is non-functional and highly distinctive, and has become associated in the minds of the consuming public with plush toy products of the highest quality and reputation finding their origin in a single source, Kellytoy.  Indeed, the Squishmallow Trade Dress when viewed as a whole – comprised of a combination of aesthetic and stylized plush toy features, including the shape, color, color combinations, texture and graphics – presents a non-functional look and feel that is uniquely associated with Kellytoy's Squishmallows.  The non-functional nature of these aesthetic features are evidenced and clear, in part, by

reference to the following:  (1) the unique combination of stylistic elements yielding no utilitarian advantage; (2) the innumerable alternative stylistic plush toy features available to and used competitors, including, (i) countless alternative plush toy shapes (e.g., traditional animal designs as opposed to Kellytoy's whimsical, abstract renditions of animals, cube shaped plush toys, etc.), (ii) numerous alternative means to depict facial features (e.g., plastic eyes, traditional plush toy facial features, etc.), (iii) myriad alternative shell materials (e.g., terrycloth, long pile plush, velboa, satin, etc.), and (iv) countless alternative stuffing materials available (e.g., beans, cotton, hard foam, etc.); furthermore, when the features of the Squishmallow Trade Dress are viewed collectively – as the law provides in assessing trade dress – it is clear that there are innumerable alternative plush designs actually used and available to competitors in the marketplace; (3) Kellytoy's not touting or marketing utilitarian advantages of its Squishmallow Trade Dress, and (4) the Squishmallow Trade Dress not resulting from a comparatively simple or inexpensive method of manufacture vis-à-vis other plush toys.  Moreover, protection of the Squishmallow Trade dress as a trademark would not impose a non-reputation-related competitive disadvantage. Regardless, however, the product features of the Squishmallow Trade Dress do not serve an aesthetic function wholly independent of any source identifying function. To the contrary, the Squishmallow Trade Dress was specifically designed to distinguish – and has succeeded in distinguishing – the source of products embodying the Squishmallow Trade Dress from the source of other toys. Kellytoy owns all right, title and interest in and to the Squishmallow Trade Dress.

81.    Without Kellytoy's authorization or consent, and having knowledge of Kellytoy's prior rights in the Squishmallow Trade Dress, Defendants have designed, manufactured, imported, distributed, advertised, offered for sale and/or sold and/or will soon commence importation, distribution, advertising, offers for sale, and sale of replicas of the Squishmallow Trade Dress to the consuming public in direct competition with Kellytoy, in or affecting interstate commerce.

82.     The Infringing Plush designs are confusingly similar to the Squishmallow Trade Dress.  Defendants' use of the Squishmallow Trade Dress has caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the public and, additionally, injury to Kellytoy's goodwill and reputation as symbolized by the Squishmallow Trade Dress.

83.     Defendants' use and further threatened uses of the Squishmallow Trade Dress thus constitutes trade dress infringement, false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

84.     As a direct and proximate result of Defendants' unlawful conduct, Defendants have misappropriated Kellytoy's rights in the Squishmallow Trade Dress, as well as the goodwill associated therewith, and have diverted sales and profits from Kellytoy to Defendants. Thus, as a direct and proximate result of Defendants' acts of willful infringement, Kellytoy has suffered and/or will suffer damage to its valuable brand and reputation, and other damages in an amount to be proven at trial, including Defendants' profits and Kellytoy's lost profits.

85.     Defendants' actions described above will cause, have caused, and will continue to cause irreparable damage to Kellytoy, unless Defendants are restrained by this Court.  Kellytoy has no adequate remedy at law with regard to Defendants' infringing conduct.  Accordingly, Kellytoy is entitled to a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116, restraining and enjoining Defendants' and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using Kellytoy's Squishmallow Trade Dress, or any colorable imitation or variation thereof, in connection with the sale and/or marketing of any products.

86.     Defendants' aforesaid acts are exceptional within the meaning of 15 U.S.C § 1117.

/ / /

/ / /

## **THIRD CAUSE OF ACTION**

### **(Common Law Trademark Infringement)**

(Against all Defendants)

87.     Kellytoy repeats and re-alleges each and every allegation of paragraphs 1 through 64 and 78 through 80 as though fully set forth herein.

88.     This claim arises under the common law of this State relating to trade dress infringement. This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of unfair competition joined with a substantial and related claim under the Trademark Laws of the United States, and under 28 U.S.C. § 1367.

89.     Kellytoy is the owner of all right, title, and interest in and to the Squishmallows Trade Dress used by Kellytoy by virtue of its extensive and continuous manufacture, marketing, and sale of products bearing such trade dress as set forth in the preceding paragraphs of this Complaint. In particular, because of their enormous sales and publicity, Kellytoy has acquired common law trade dress rights in and to the Squishmallows Trade Dress. Kellytoy's common law trade dress is distinctive, and furthermore, has acquired secondary meaning, such that Squishmallow Trade Dress has come to identify its goods in California and elsewhere and to distinguish them from goods of a different origin.  As such, Kellytoy has common law rights to the Squishmallow Trade Dress.

90.     The infringing products imported, advertised, distributed, offered for sale and sold by Defendants incorporate matter constituting replicas and imitations of Kellytoy's common law trade dress. Such unauthorized use by Defendants of Kellytoy's common law trade dress constitutes common law trade dress infringement and unfair competition, and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the products and to cause purchasers to believe such products are authentic products of Kellytoy when, in fact, they are not.

91.    Upon information and belief, Defendants have willfully and intentionally misappropriated one or more aspects of Kellytoy's common law trade dress with the intent of causing confusion, mistake, and deception as to the source of its goods and with the intent to palm off its goods as those of Kellytoy and to place others in the position to palm off its goods as those of Kellytoy, and as such, Defendants have committed trade dress infringement and unfair competition under the common law.

92.    By such actions in infringing' Kellytoy's common law trade dress, Defendants are improperly trading upon the enviable reputation and goodwill of Kellytoy and impairing' Kellytoy's valuable rights in and to such trade dress.

93.    Kellytoy is informed and believes, and thereupon alleges, that Defendants committed the above alleged acts willfully, maliciously, knowingly, and/or in conscious disregard of Kellytoy's rights, and Kellytoy is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of California.

94.    Kellytoy has no adequate remedy at law. The conduct of Defendants has caused and, if not enjoined, will continue to cause, irreparable damage to Kellytoy's rights in and to its trade dress, and to Kellytoy's business, reputation, and goodwill.

## **FOURTH CAUSE OF ACTION**

### **(California Common Law Unfair Competition)**

(Against all Defendants)

95.    Kellytoy repeats and re-alleges each and every allegation of paragraphs 1 through 1 through 64 and 78 through 80 as though fully set forth herein.

96.    This claim arises under the common law of the State of California relating to unfair competition.

97.    Defendants' Infringing Plush incorporates matter constituting reproductions, copies and colorable imitations of Kellytoy's Squishmallow Trade Dress.  Defendants' unauthorized use of Kellytoy's Squishmallow Trade Dress

constitutes unfair competition, and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the parties' products and to cause purchasers to believe Defendants' products are authentic products of Kellytoy when in fact they are not.

98.     Upon information and belief, Defendants have intentionally appropriated Kellytoy's Squishmallow Trade Dress with the intent of causing confusion, mistake, and deception as to the source of their goods and with the intent of palming off their goods as those of Kellytoy and to place others in the position to palm off their goods as those of Kellytoy.  Defendants have thus committed unfair competition under the common law of the State of California.

99.     By their actions in infringing Kellytoy's Squishmallow Trade Dress, Defendants are improperly trading upon the reputation and good will of Kellytoy and are impairing Kellytoy's valuable rights in its Squishmallow Trade Dress.

100.    Upon information and belief, said activities of Defendants alleged herein were and are willful and intentional acts of unfair competition.

101.    Kellytoy has no adequate remedy at law.  Thus said activities of Defendants have caused, if not enjoined, will continue to cause irreparable harm and damage to the rights of Kellytoy in its Squishmallow Trade Dress and to its business reputation and good will.

102.    Upon information and belief, Defendants have engaged in their unlawful conduct alleged herein intentionally, maliciously, fraudulently and oppressively entitling Kellytoy to punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (California Statutory Unfair Competition –
### California Bus. & Prof. Code § 17200, *et seq.*)

(Against all Defendants)

103.    Kellytoy repeats and re-alleges each and every allegation of the preceding paragraphs, as though fully set forth herein.

104.   By reason of the foregoing, Defendants have been, and are, engaged in "unlawful, unfair or fraudulent business practices" in violation of California Business and Professional Code Section 17200 *et seq*.

105.   Kellytoy's Squishmallows Trade Dress constitutes a protectable property right, and the Defendants' conduct – including without limitation their infringement of the Squishmallows Trade Dress – will and has caused an impairment and diminishment of that property right.

106.   Indeed, the activities of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to the rights of Kellytoy in its Squishmallow Trade Dress and to its business reputation and good will.  Kellytoy has no adequate remedy at law for these wrongs and injuries.  The damage to Kellytoy includes harm to its goodwill and reputation in the marketplace that money cannot compensate.  Accordingly, Kellytoy is entitled to a preliminary and permanent injunction restraining and enjoining Defendants' and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using Kellytoy's Squishmallow Trade Dress, or any colorable imitation or variation thereof, in connection with the sale and/or marketing of any products.  Kellytoy is further entitled to restitutionary disgorgement of all of Defendants' ill-gotten gains pursuant to California Business and Professions Code § 17203 and to recover its costs and attorneys' fees incurred in bringing and prosecuting this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Kellytoy prays for judgment against Defendants as follows:

1.   That Defendants, their officers, members, directors, agents, servants, employees, successors, licensees, representatives, successors, assigns, and all persons acting in concert or participation with them, be permanently enjoined and restrained from:

(i)    Manufacturing, importing, distributing, advertising, offering to sell or selling the Infringing Plush or any colorable imitations of the Squishmallow Designs and/or Squishmallow Trade Dress;

(ii)    Using the Squishmallow Trade Dress or any confusingly similar trade dress in connection with plush or other toys;

(iii)   Using the Squishmallow Trade Dress, or any confusingly similar mark, in connection with the advertisement, offer to sell or sale of any toy products;

(iv)   Using any false designation of origin, or representing or suggesting directly or by implication that Defendants, or any brands or other sources identifiers created by Defendants, or their toys, are affiliated with, associated with, authorized by, or otherwise connected to Kellytoy, or that Defendants are authorized by Kellytoy to use the Squishmallow Trade Dress or Squishmallow Designs;

(v)    Copying, distributing, displaying or making derivative works of the Squishmallow Designs;

(vi)   Engaging in any other activity constituting unfair competition with Kellytoy, or constituting infringement of the Squishmallow Trade Dress or Squishmallow Designs; and

(vii)  Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (vi) above, or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (vi) above.

2.     That Defendants be directed to file with the Court and serve on Kellytoy, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

3.     That the Court direct any third parties providing services to Defendants in connection with any infringing and/or enjoined conduct, including social media platforms (*e.g.*, Instagram, Facebook, Twitter), online marketplaces (*e.g.*, Alibaba, eBay, Etsy, AliExpress, Amazon, Taobao), online payment providers, including credit card companies (*e.g.*, PayPal, Visa) and other service providers (*e.g.*, Google, GoDaddy, LiveChat, Shopify) to cease providing services to Defendants in connection with the offer for sale and sale of the Infringing Plush or any other products using or embodying the Squishmallow Trade Dress or Squishmallow Designs.

4.     That Defendants be required to pay Kellytoy such damages as it has sustained as a consequence of Defendants' infringement of the of the Squishmallow Trade Dress and trebling of those damages under 15 U.S.C. § 1117;

5.     Adjudge that each of the Defendants, by its unauthorized use of Kellytoy's the Squishmallow Trade Dress for plush toys, and such other acts as it may have undertaken relating to the Squishmallow Trade Dress, have violated Kellytoy's rights under 15 U.S.C. § 1125(a), under California state law (including, without limitation, Cal. Bus. & Prof. Code § 17200 *et seq.*), and under common law, and that they have done so willfully and for the purpose of violating Kellytoy's rights and damaging Kellytoy's goodwill and reputation in the Squishmallow Trade Dress;

6.     Direct Defendants to provide Kellytoy with an identification in writing of any and all entities that are presently using the Squishmallow Designs and/or Squishmallow Trade Dress in the United States on Defendants' behalf and inform them that they must immediately cease such use;

7.     Direct Defendants to immediately recall any and all merchandise previously provided to any United States entity under the Squishmallow Trade Dress or Squishmallow Designs;

8.     Enter an order, pursuant to 15 U.S.C § 1118, directing Defendants to deliver for destruction all products, brochures, marketing materials, decals, stickers, signs, prints, packages, receptacles, wrappers, boxes, and advertisements in their possession or under their control, bearing any unauthorized copy of any of the Squishmallow Trade Dress, or any simulation, reproduction, counterfeit, copy, confusingly similar likeness, or colorable imitation thereof, and all plates, molds, matrices, programs and other means of making same;

9.     Enter an order, pursuant to 17 U.S.C. § 503(a), impounding all of Defendants' products that infringe Kellytoy's copyrights in the Squishmallow Designs, as well as any plates, molds, matrices, programs, or other articles by means of which copies of the works embodied in the Squishmallow Designs may be produced;

10.    Enter an order, pursuant to 17 U.S.C § 503(b), requiring the destruction of all copies of Defendants' products that infringe Kellytoy's copyright in the Squishmallow Designs, as well as any plates, molds, matrices, programs, or other articles by means of which copies of the works embodied in the Squishmallow Designs may be produced;

11.    That each Defendant provide Kellytoy in writing with the following information relating to Defendants' goods marketed, advertised, offered for sale, or sold under the Squishmallow Trade Dress or Squishmallow Designs:

(i)     the name, address and telephone number of each and every United States entity to whom Defendants have made available or otherwise provided any such products; and

(ii)    the total number of units distributed and sold;

(iii)   the total number of units remaining in inventory; and

     (iv)   a full accounting as to the precise dollar amount of such products made available or provided and the profits recognized by Defendants in connection with such actions;

12.    Direct Defendants to pay the costs of corrective advertising;

13.    Direct Defendants to pay Plaintiff's attorneys' fees and costs incurred in initiating and prosecuting this action;

14.    Direct Defendants to pay punitive damages and exemplary damages according to proof;

15.    That Kellytoy recover its actual damages, Kellytoy's lost profits, and each of Defendants' profits arising from Defendants' conduct complained-of herein;

16.    That the Court award enhanced profits and treble damages;

17.    That Kellytoy be awarded statutory damages;

18.    That Kellytoy be awarded interest, including pre-judgment interest, on the foregoing sums;

19.    That the Court direct such other actions as the Court may deem just and proper to prevent the public from deriving the mistaken impression that any products or services offered, advertised, or promoted by or on behalf of Defendants are authorized by Kellytoy or related in any way to Kellytoy's products or services;

20.    Providing that Defendants' conduct constitutes willful, deceptive acts and practices in the conduct of business, trade and/or commerce, in violation of California Business and Professions Code § 17200 et seq. and common law;

21.    Providing that Defendants' conduct will create a likelihood of dilution and injury to Kellytoy's business reputation in violation of California Business and Professions Code § 17200 et seq. and common law;

22.    Providing that Defendants used Kellytoy's Squishmallows Trade Dress with the intent to cause confusion and to deceive the public in violation of California Business and Professions Code § 17200 et seq. and common law;

23.     Providing that Defendants have injured Kellytoy by depriving it of sales of its genuine goods and services, by injuring its business reputation, and by passing off Defendants' goods as Kellytoy's goods and/or created a likelihood of confusion and/or false designation of origin, all in violation of California Business and Professions Code § 17200 et seq. and common law;

24.     Providing that Defendants' willfully misappropriated and used the Squishmallows Trade Dress and such conduct constitutes misappropriation, unfair competition and unjust enrichment, all in violation of the common law of California Business and Professions Code § 17200 et seq. and common law;

25.     That Defendants be ordered to disgorge all of their ill-gotten gains pursuant to California Business and Professions Code § 17203; and

26.     For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DATED: March 2, 2020                FREEMAN, FREEMAN & SMILEY, LLP


By:  ____/ s / Mark B. Mizrahi_____
                TODD M. LANDER
                MARK B. MIZRAHI
                Attorneys for Plaintiff
                KELLYTOY WORLDWIDE, INC.

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands and requests a trial by jury of all issues raised that

3

are triable by jury.

4

Respectfully submitted,

5

DATED: March 2, 2020        FREEMAN, FREEMAN & SMILEY, LLP

6

7

8

By:        */ s / Mark B. Mizrahi*

TODD M. LANDER

9

MARK B. MIZRAHI

Attorneys for Plaintiff

10

KELLYTOY WORLDWIDE, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28